## WHIPPLE v. MISSISSIPPI & YAZOO PACKET CO.

*(District Court, S. D. Mississippi, W. D.   January Term, 1888.)*

1. SHIPPING—CHARTER-PARTY—SEAWORTHINESS—CONTINUING GUARANTY.
    Libelant, the owner of a river steamer at Louisville, Kentucky, contracted with respondents that the master of the steamer should take her to Vicksburg, Mississippi, and employ her in respondents' service upon the Yazoo river for five months, guarantying that the vessel should have the necessary underwriters' certificate as to her seaworthiness. She was inspected at Louisville, and a certificate obtained from the secretary of the underwriters, but, upon a subsequent inspection, during her service, the certificate was withdrawn. The master charged the underwriters with fraud, threatened suit against them, settled up with respondents, took possession of the vessel, and respondents declared the contract at an end. *Held* that, under all the circumstances, the guaranty must be construed as a continuing one, not limited to the time the vessel went into respondent's employment.

2. RELEASE AND DISCHARGE—EFFECT.
    Respondents, in a suit for damages for breach of charter-party, filed a cross-libel for damages for false representations. It appeared that before the commencement of the suit the master of the vessel had settled with respondents, giving them a receipt and acquittance for moneys due from them, and had taken possession of the vessel. *Held*, that the settlement was conclusive, and the cross-libel should be dismissed.

In Admiralty.   Libel and cross-libel for damages.

*Lee & McKee*, for libelant.   *Miller, Smith & Hirsh*, for respondents.

HILL, J.   This case is submitted upon libel, answer, and cross-libel, answer, and proofs.   The libel, in substance, charges that the libelant was the owner of the steamer Ed Foster, and that on the 9th day of September, 1887, she, by J. W. Whipple, the master of said steamer, entered into a contract in writing with the defendant company, in the nature of a charter-party, by the terms of which said J. W. Whipple agreed, as master of said steamer, to take her to Vicksburg, Mississippi, and employ her in the service of the defendant company for a period of five months, and for the service of said master and said vessel the defendant company was to pay the sum of $225 at the end of each month, and would also pay the expense of transporting said vessel from Louisville, Kentucky, to Vicksburg, Mississippi.   That in fulfillment of said written contract,—a charter-party,—said master did transport said vessel to Vicksburg, where she was put into the Yazoo river trade, and so remained until the 26th day of October, 1887, when the defendant company declined to use her any longer under said charter-party, and declared said charter-party at an end, although libelant had, on her part, performed all the obligations on her part under said contract.   That the master, acting for libelant, protested against the breach of said contract, upon the part of said defendant company, who absolutely refused to comply with their part of said contract, alleging that libelant had forfeited the same by reason of an alleged breach thereof by libelant of a guaranty in said charter-party touching the boat's underwriters' papers.

Libelant alleges that she did have said boat inspected, and obtained a certificate of her seaworthiness, and obtained from the secretary of the underwriters a certificate in proper form; that said certificate remained suspended in the cabin of said boat until taken down by one of the respondents, and returned to the underwriters, who had unjustly and wantonly, without the act, procurement, or fault of libelant or said master, or without any just or sufficient cause whatever, revoked the said certificate; that said steamer was inspected by the United States inspectors of hulls and boilers at Louisville, and received their certificate and license for the ensuing year, which said steamer still carries; that by reason of the facts stated she has fulfilled and performed her guaranty as aforesaid. The libelant, by her libel, claims a decree for the balance of . charter-party money agreed to be paid, also for money alleged to have been paid out by the master for services by the crew, and for other expenses of the steamer. The answer of the respondents, which is made a cross-libel, admits the contract, or charter-party, as alleged; but, in substance, sets up as a defense to the prayer of libelant that, upon an inspection made by a duly-authorized inspector of the underwriters, said boat was declared unseaworthy, and said underwriters' certificate was withdrawn without any act on their part, and by means of which said boat could no longer be used by them for the purpose for which she was chartered, as no insurance could be had on the freight transported upon her, and by means of which said guaranty was broken and forfeited, and respondents were released from said contract. Respondents, by their answer, further aver that after said certificate of said underwriters was withdrawn, a final settlement was made between said master, acting for libelant, and respondents, by which all matters arising under said contract were adjusted and settled, and full payment was made to said master, and for which he executed a receipt, signed by said J. W. Whipple, as master of said steamer. Defendants further set up, by way of defense, and as a cross-libel, that as an inducement to respondents to make said contract, said J. W. Whipple, acting for libelant, falsely represented to respondents that he had then recently had repairs put upon said steamer, costing $1,800; that she only drew light draught, 16 inches, and had on her a first-class steam capstan; that said steamer was chartered by them for the purpose of being employed in the Yazoo river trade in low water, which was well known to said master, that libelant had not expended anything like the sum of $1,800 in the repair of said steamer; that her light draught was 20½ inches instead of 16, as stated by said master, and that said capstan was not first class, but was of inferior quality and unfit for the purposes intended; that by reason of said false and fraudulent representations said steamer was wholly worthless to respondents, and that by reason of the amount they expended in payment of part of the charter contract for payment of the crew, and other expenses of said steamer, they have suffered damages to the amount of $1,000.75, for which sum they claim a decree against said steamer, with a lien upon her, her tackle, furniture, etc. The answer to the cross-libel denies the breach of the warranty as alleged, denies that there was a final

settlement of the matters arising out of the contract as alleged, also denies the fraudulent statements as charged, but admits that the master did state that her light draught was 16 inches, and that he did state that her capstan was first-class, and avers that said statements were true.

Quite a number of witnesses have testified as to the statements made by J. W. Whipple, and as to the draught of the boat, and as to the capstan, but, as there are two other points which must be decisive of the rights and liabilities of the respective parties, need not be considered. The first is as to the construction which ought to be put upon the contract of guaranty. While there may be some uncertainty as to the intention of the parties arising upon the face of the contract, when the relation of the parties and the action which they took in relation to it is considered, I do not find much difficulty in arriving at that intention and understanding, and what that was must govern in the construction of this as well as all other written contracts and agreements.

*Secondly.* It is contended upon the part of libelant that the guaranty was only to extend to the time the vessel went into the employment of the respondents, and upon the part of respondents that it was to continue until the end of the employment. By the terms of the contract Capt. Whipple, the son of the libelant and the master of the boat, was to continue in command of her; the service was to be a joint one of Capt. Whipple and the boat. The contract upon the part of Mrs. Whipple, the owner, was that she guarantied that the boat should have the necessary underwriters' certificate or papers to enable the respondents to obtain insurance upon the freight transported. When the inspector declared her unseaworthy, and crossed her, as it is called, and withdrew the certificate, Capt. Whipple, who made the contract, and knew its meaning, charged that the action of the underwriters' and the inspector was a gross fraud upon the rights of libelant; that he would sue them for damages; and that he would have the vessel reinstated. Had it not been the understanding that the guaranty was to continue, this claim for damages would have accrued to respondents instead of to libelant. Then, upon the withdrawal of the certificate and underwriters' papers, he settled up with respondents and gave a receipt and acquittance up to that date, and took possession of the boat, as I understand it from all the evidence, for the owner, and not for the respondents, who then declared that they could not use her for the want of the papers, which had been withdrawn, and declared the contract at an end. From all these circumstances I am satisfied that the understanding of the parties was that this guaranty should continue to the end of the service, and that by the withdrawal of the underwriters' papers, the guaranty was broken and forfeited, and the respondents released from it, as no immediate steps were taken by libelant to have the proper underwriters' papers restored.

I am satisfied, from all the proof, that the settlement made between Capt. Whipple and the respondents must be held as final and conclusive, as to all the claims set up in the cross-libel, and estops the respondents from the relief prayed for in the cross-libel.

The result is that both the libel and cross-libel must be dismissed,

and that libelant will be decreed to pay the costs, except the costs of summoning and the attendance of the witnesses, the testimony, except that of the parties themselves, being upon an immaterial issue.